**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WYCKOFF PROPERTIES, LP, D/B/A ALDO'S PANE & VINO, *et al.*, | |
| Plaintiffs, | **Civil Action No. 2:21-cv-00238-WJM-MF** |
| v. | |
| SELECTIVE INSURANCE COMPANY, *et al.*, | **MOTION RETURNABLE: March 1, 2021 (ORAL ARGUMENT REQUESTED)** |
| Defendants. | |

<u>**DEFENDANT, AMERICAN ZURICH INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE CLAIMS OF PLAINTIFF, TASTE BUDS LLC**</u>

**CLYDE & CO US LLP**

Timothy A. Carroll (NJ I.D. 124782014)
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: 267-271-4822
Fax: 973-210-6701
Email: timothy.carroll@clydeco.us

Patrick Hofer (Admission Request Forthcoming)
1775 Pennsylvania Avenue, N.W., 4th Floor
Washington, D.C. 20006
Telephone: 202-747-5100
Fax: 202-747-5150
Email: patrick.hofer@clydeco.us

Jared Clapper (Admission Request Forthcoming)
55 Monroe Street, Suite 3000
Chicago, IL 60603
Telephone: 312-635-7000
Fax: 312-635-6950
Email: jared.clapper@clydeco.us

*Attorneys for Defendant,
American Zurich Insurance Company*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

      A.    Allegations of the Complaint ................................................................. 3

      B.    The Terms of the Zurich Policy ............................................................. 5

III.  APPLICABLE LEGAL STANDARDS .............................................................. 8

      A.    Rule 12(b)(6) Standards ........................................................................ 8

      B.    Insurance Coverage Standards ............................................................ 10

IV.   ARGUMENT ...................................................................................................... 12

      A.    Taste Buds Is Not Entitled To Business-Income Coverage Because Taste
            Buds Does Not Allege "Direct Physical Loss Of Or Damage To" Property ........ 12

            1.    Case law holds that "direct physical loss of or damage to" property
                  requires physical alteration of property .................................... 12

            2.    Other policy language shows that "direct physical loss of or
                  damage to" property means actual physical alteration of property .......... 16

            3.    The "Executive Order Shutdown" does not constitute or cause
                  "direct physical loss of or damage to" property ...................... 19

      B.    Taste Buds Is Not Entitled To Civil-Authority Coverage Because Taste
            Buds Does Not Allege A "Covered Cause Of Loss" Or Facts Satisfying
            Numerous Other Requirements For Coverage ....................................... 22

      C.    The Policy's Virus Exclusion Also Precludes All Coverage .............................. 25

      D.    Taste Buds' "Regulatory Estoppel" Allegations Are Legally Insufficient ........... 29

V.    CONCLUSION .................................................................................................. 30

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*1210 McGavock Street Hospitality Partners, LLC v. Admiral Indem. Co.*
2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020)................................................. 18, 28

*Alvin v. Suzuki*
227 F.3d 107 (3d Cir. 2000).................................................................................. 10

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)................................................................................................. 9

*Ashrit Realty LLC v. Tower Nat'l Ins. Co.*
2015 WL 248490 (N.J. Super. Ct. App. Div. Jan. 20, 2015).................................. 11

*Ba Lax, LLC v. Hartford Fire Ins. Co.*
2021 WL 144248 (C.D. Cal. Jan. 12, 2021............................................................. 27

*Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*
2021 WL 37984 (E.D. Mo. Jan. 5, 2021) ............................................................... 28

*Boxed Foods Co., LLC v. California Capital Ins. Co.*
2020 WL 6271021 (N.D. Cal. Oct. 26, 2020)......................................................... 27

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*
2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) ........................................................... 30

*Buczek v. Continental Cas. Ins. Co.*
378 F.3d 284 (3d Cir. 2004)................................................................................... 11

*Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*,
948 A.2d 1285 (N.J. 2008)................................................................................. 11, 30

*Customized Distribution Servs. v. Zurich Ins. Co.*
862 A.2d 560 (N.J. Super. Ct. App. Div. 2004)................................................. 15, 21

*Diesel Barbershop, LLC v. State Farm Lloyds*
2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ...................................................... 15

*Edison Kennedy, LLC v. Scottsdale Ins. Co.*
2021 WL 22314,(M.D. Fla. Jan. 4, 2021)............................................................... 28

*El Novillo Rest. v. Certain Underwriters at Lloyd's, London*
   2020 WL 7251362 (S.D. Fla. Dec. 7, 2020) .............................................................. 15

*Estate of Doerfler v. Fed. Ins. Co.*
   2020 WL 2488733 (N.J. Super. Ct. App. Div. May 14, 2020) ................................. 26

*F.S. v. L.D.*
   827 A.2d 335 (N.J. Super. Ct. App. Div. 2003) ...................................................... 11

*FAFB LLC v. Blackboard Ins. Co.*
   MER-L-0892-20 (N.J. Super. Ct. Law Div. Nov. 4, 2020) .............................. passim

*Foman v. Davis*
   371 U.S. 178 (1962) ................................................................................................. 10

*Franklin Packaging Co. v. California Union Ins. Co.*
   408 A.2d 448 (N.J. Super. Ct. App. Div. 1979) ...................................................... 26

*Graspa Consulting, Inc. v. United Nat'l Ins. Co.*
   2021 WL 199980 (S.D. Fla. Jan. 20, 2021) ............................................................ 15

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*
   2014 WL 6675934 (D.N.J. Nov. 25, 2014) ........................................... 15, 16, 19, 21

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.*
   2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) .......................................................... 15

*Homesite Ins. Co. v. Hindman*
   992 A.2d 804 (N.J. Super. Ct. App. Div. 2010) ...................................................... 18

*In re Prudential Financial, Inc. Securities Litigation*
   2020 WL 7706860 (D.N.J. Dec. 29, 2020) ................................................................ 9

*Independence Restaurant Group. v. Certain Underwriters at Lloyd's, London*
   2021 WL 131339 (E.D. Pa. Jan. 14, 2021) ........................................... 15, 18, 21, 23

*K D Unlimited Inc. v. Owners Ins. Co.*
   2021 WL 81660 (N.D. Ga. Jan. 5, 2021) ................................................................. 22

*Kanter v. Barella*
   489 F.3d 170 (3d Cir. 2007) .................................................................................... 10

*Kessler Dental Assocs., P.C. v. Dentists Ins. Co.|*
   2020 WL 7181057 (E.D. Pa. Dec. 7, 2020) ............................................................. 30

*Kirsch v. Aspen Am. Ins. Co.*
   2020 WL 7338570 (E.D. Mich. Dec. 14, 2020) ........................................................ 15

*Lake v. Arnold*
   232 F.3d 360 (3d Cir. 2000) .................................................................... 1, 10, 32

*Mac Property Group LLC v. Selective Fire and Cas. Ins. Co.*
   2020 WL 7422374 (N.J. Super. Ct. Law Div. Nov. 05, 2020) .......................................... 10, 20

*Malaube, LLC v. Greenwich Ins. Co.*
   2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) .......................................................... 22

*Manahawkin Convalescent v. O'Neill*
   85 A.3d 947 (N.J. 2014) ............................................................................ 17

*Mattdogg, Inc. v. Philadelphia Indem. Ins. Co.*
   2020 WL 7702634 (N.J. Super. Ct. Law Div. Nov. 17, 2020) .............................. 10, 23, 28, 30

*Michael Cetta, Inc. v. Admiral Indem. Co.*
   2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) ................................................ 15, 18, 22

*Moody v. Hartford Fin. Grp., Inc.*
   2021 WL 135897 (E.D. Pa. Jan. 14, 2021) ................................................. 19, 24, 30

*N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*
   2020 WL 6501722 (D.N.J. Nov. 5, 2020) ................................................ 9, 11, 12, 23

*Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am*
    2020 WL 7024882 (M.D.N.C. Nov. 30, 2020) ....................................................... 28

*Newchops Rest. Comcast LLC v. Admiral Indem. Co.*
   2020 WL 7395153 (E.D. Pa. Dec. 17, 2020) .................................................... passim

*O'Brien Sales & Mktg., Inc. v. Transportation Ins. Co.*
   2021 WL 105772 (N.D. Cal. Jan. 12, 2021) .......................................................... 15

*Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*
   160 A.3d 1263 (N.J. 2017) .......................................................................... 16

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*
   2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) ........................................................ 15

*Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*
  245 F. Supp. 2d 563 (D.N.J. 2001),
  *aff'd*, 311 F.3d 226 (3d Cir. 2002) ............................................................. 13, 15, 19

*Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*
  311 F.3d 226 (3d Cir. 2002) ................................................................................. 13

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*
  2020 WL 7078735 (D. Kan. Dec. 3, 2020) ........................................................ 15

*Re: Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*
  2020 WL 7338081 (D.N.J. Dec. 14, 2020) ........................................... 10, 14, 19, 20

*Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*
  2020 WL 6503405 (S.D. Miss. Nov. 4, 2020) .................................................... 18

*Royal Ins. Co. v. Rutgers Cas. Ins. Co.*
  638 A.2d 924 (N.J. Super. Ct. App. Div. 1994) .................................................. 11

*S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*
  2021 WL 147139 (W.D. Pa. Jan. 15, 2021) ................................................. 20, 24

*Sands v. McCormick*
  502 F.3d 263 (3d Cir. 2007) ............................................................................... 9

*Santiago v. Warminster Twp.*,
  629 F.3d 121, 130 (3d Cir. 2010) .................................................................... 9, 23

*Santo's Italian Cafe LLC v. Acuity Ins. Co.*
  2020 WL 7490095 (N.D. Ohio Dec. 21, 2020) ................................................... 18

*Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*
  46 A.3d 1272 (N.J. 2012) ................................................................................. 10

*Shaler ex rel. Shaler v. Toms River Obstetrics & Gynecology Assocs.*|
  893 A.2d 53 (N.J. Super. Ct. App. Div. 2006) ................................................... 11

*Shore Options Inc. v. Great Am. Ins. Grp.*
  2020 WL 5627211 (D.N.J. Sept. 21, 2020) ....................................................... 10

*Sosa v. Massachusetts Bay Ins. Co.*
  206 A.3d 1011 (N.J. Super. Ct. App. Div. 2019) ................................................ 11

*TAQ Willow Grove, LLC v. Twin City Fire Ins.*
2021 WL 131555 (E.D. Pa. Jan. 14, 2021) ................................................................ 18, 21, 30

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*
2020 WL 7351246 (W.D. Tex. Dec. 14, 2020) ................................................................ 15, 22

*TJBC v. Cincinnati Ins. Co.*
2021 WL 243583 (S.D. Ill. Jan. 25, 2021)........................................................................ 14, 18

*Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*
2020 WL 7024287 (E.D. Pa. Nov. 30, 2020) ................................................................ 18, 28

*Toro v. Rodriguez*
2006 WL 3350857 (N.J. Super. Ct. Law Div. Nov. 17, 2006) .................................................. 3

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*
2021 WL 131556 (E.D. Pa. Jan. 14, 2021) ............................................................................ 18

*Unmasked Management, Inc. v. Century-National Ins. Co.*
2021 WL 242979 (S.D. Cal. Jan. 22, 2021)........................................................................ 15, 21

*Vassiliu v. Daimler Chrysler Corp.*
839 A.2d 863 (N.J. 2004)........................................................................................................ 11

*Voorhees v. Preferred Mat. Ins. Co.*
607 A.2d 1255 (N.J. 1992)...................................................................................................... 11

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*
968 A.2d 724 (N.J. Super. Ct. App. Div. 2009)............................................................... passim

*Wear v. Selective Ins. Co.*
190 A.3d 519 (N.J. Super. Ct. App. Div. 2018)...................................................................... 11

## Other Authorities

11A COUCH ON INS. § 167:12 ....................................................................................... 17

5 APPLEMAN, INSURANCE LAW AND PRACTICE, § 3083 (1970) .................................................. 27

COUCH ON INSURANCE § 148:46 (3d ed.)............................................................................. 13, 15

## Rules

FED. R. CIV. P. 12(b)(6)................................................................................................... 1, 8, 1

Defendant American Zurich Insurance Company ("Zurich") respectfully submits this brief in support of its motion to dismiss the claims of Plaintiff, Taste Buds LLC d/b/a The Mason Jar ("Taste Buds"), pursuant to Rule 12(b)(6).

## I.     <u>INTRODUCTION</u>

Seven unrelated restaurants, including Taste Buds, filed this lawsuit seeking insurance coverage from four unrelated insurance companies, including Zurich, for business-income losses allegedly sustained due to the SARS-CoV-2 virus pandemic.  Of the seven plaintiff restaurants, only Taste Buds alleges that it has an insurance policy issued by Zurich, and thus only Taste Buds asserts claims against Zurich.[1]  Taste Buds alleges that its losses were caused by an "Executive Order Shutdown," issued to stem the spread of the SARS-CoV-2 virus, by preventing Taste Buds from using its restaurant premises as intended.  Taste Buds seeks breach-of-contract damages and a declaratory judgment that its losses are covered under the Zurich Policy's business-income and civil-authority coverage parts.  Taste Buds' claims against Zurich should be dismissed for failure to state a claim upon which relief can be granted.

First, the Zurich Policy covers loss of business income only when such loss is due to suspension of the insured's business caused by ***direct physical loss of or damage to property*** at its premises.  Taste Buds fails to allege that any "direct physical loss of or damage to" property occurred.  Taste Buds alleges that the Executive Order Shutdown constitutes "the physical loss of property," but as multiple courts have recognized—including courts applying New Jersey law—the loss of ability *to use* property is pure economic loss that does not constitute "direct physical loss of or damage to property."  There must be some actual physical alteration of property, and Taste Buds does not allege that any occurred.  Taste Buds' claim for business-

[1] All Plaintiffs other than Taste Buds have voluntarily dismissed their claims against Zurich with prejudice.  ECF 6.

income coverage should be dismissed because the complaint does not allege a "direct physical loss of or damage to" Taste Buds' property.

Second, the Zurich Policy covers loss of business income if a civil authority prohibits access to the insured's premises, but only when a covered cause of loss causes damage to property other than the insured's property, but within one mile of it, and the action of civil authority is taken in response to dangerous physical conditions resulting from the damage to such other property. Taste Buds does not allege a covered cause of loss, defined in part as "direct physical loss," because the Executive Order Shutdown does not qualify as such. The order cannot be both the alleged cause of loss and the civil authority's response to it. Also, the Executive Order Shutdown was issued to curtail the spread of the SARS-CoV-2 virus, not in response to dangerous physical conditions resulting from damage to someone else's property. In addition, Taste Buds does not allege facts necessary to satisfy the requirements for this coverage, including that access to the premises was prohibited. Taste Buds' claim for civil-authority coverage also should be dismissed.

Third, even if Taste Buds were held to have alleged facts sufficient to state a claim for either business-income or civil-authority coverage, and no such facts have been alleged, the policy's virus exclusion clearly applies to exclude coverage. The exclusion prominently states that Zurich "will not pay for loss or damage caused by or resulting from ***any virus***, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." The exclusion "applies to all coverage under all forms and endorsements that comprise" the policy's property coverage part, including to "forms or endorsements that cover business income, extra expense or action of civil authority." As many court decisions from around the country have held, this short and clear exclusion leaves no doubt that losses caused by or resulting from

2

any virus are excluded.  Taste Buds' losses resulting from the Executive Order Shutdown, which was caused by or resulted from the SARS-CoV-2 virus, are therefore excluded.  The Court should dismiss Taste Buds' claims against Zurich for this additional reason.

Finally, neither "regulatory estoppel" nor amendment can save Taste Buds' legally insufficient complaint from dismissal.  The "regulatory estoppel" theory cannot apply here because nothing that any industry trade group told insurance regulators in 2006 is inconsistent with Zurich's coverage assertions here — that Taste Buds' losses are not covered and/or are excluded by the virus exclusion, as numerous other courts in similar cases have concluded. Finally, Taste Buds cannot replead to avoid the fact that Taste Buds' losses are caused by or result from the SARS-CoV-2 virus — "the reason the shutdown has been ordered," as Taste Buds alleges.  Over 100 decisions nationwide support the conclusion that there is no coverage for the business-income loss Taste Buds alleges.  The Court should therefore dismiss Taste Buds' claims against Zurich with prejudice.

## II.      BACKGROUND

### A.      Allegations of the Complaint

Taste Buds seeks insurance coverage for "business income losses" under "the Business Interruption and/or the Civil Authority" provisions of its Zurich Policy.[2]  ECF 1, Complaint ¶¶ 20, 106, 109.  Taste Buds attributes its losses to "the physical loss of use, loss of functionality, or loss of access to" its property "occasioned by the Executive Order Shutdown."  *Id.* ¶¶ 19, 76.

---

[2]   The complaint also appears to seek coverage under "Communicable Disease and/or Food Contamination" provisions in some insurers' policies.  However, the Zurich Policy does not contain any such provisions.  *See* Zurich Policy, AZIC_Taste_Buds_0000001 *et seq.* (**Exhibit 1**). So, Taste Buds has no claim to that coverage as a matter of law.  The Court should dismiss that claim with prejudice, to the extent it is even made, for failure to state a claim upon which relief can be granted.  *See, e.g., Toro v. Rodriguez*, 2006 WL 3350857, at *2 (N.J. Super. Ct. Law Div. Nov. 17, 2006) (concluding that insurer did not owe particular type of coverage because "the insured's policy does not contain" that type of coverage).

It claims that, "[w]hen the State government orders an insured to close down its property, making it unavailable for any of the purposes for which the property is intended, this constitutes the 'physical loss of' such property." *Id.* ¶ 81.

Taste Buds alleges that the "Executive Order Shutdown" was issued because of SARS-CoV-2, a "highly contagious" virus whose infection "can cause a suite of serious respiratory, circulatory, and neurological maladies known as COVID-19." *Id.* ¶¶ 49–50. The complaint references "Executive Order No. 103," which "recognize[d] that there was, as of March 9, 2020, an 'actual' or 'potential' threat" posed by the SARS-CoV-2 virus; "Executive Order No. 104," which "closed '[a]ll restaurants' as of March 18, 2020"; "Executive Order No. 107," which closed "non-essential retail businesses"; and "[n]umerous" other orders, described in the complaint, which generally "recognized that the [SARS-CoV-2 virus] contaminates surfaces within a building and that those surfaces must be cleaned and disinfected, both before any businesses may reopen and repeatedly during a work day after a business reopens." *Id.* ¶¶ 58–74. While Taste Buds alleges generally that "[a] virus causes 'physical loss of or damage to' property," and that "[c]oronavirus contamination" is "dangerous," Taste Buds does not allege that the SARS-CoV-2 virus actually contaminated its property or that any such contamination damaged its property or is covered by the Zurich Policy. ECF 1, Complaint ¶ 75. Instead, Taste Buds claims that Zurich has "failed or refused to provide coverage for [its] income losses occasioned by the Executive Order Shutdown for various reasons, none of which comport or comply with the law of New Jersey." *Id.* ¶ 76. Taste Buds claims that "the loss of the Insured Property as a result of the Executive Order Shutdown," "constitutes the 'physical loss of' such property." *Id.* ¶¶ 81–83.

B.     **The Terms of the Zurich Policy**

Taste Buds' complaint identifies its Zurich-issued insurance policy as "no. CPO 0236 822-00," effective from "November 30, 2019 to November 30, 2020."  ECF 1, Complaint ¶ 38. However, Taste Buds did not attach a copy of the policy to its complaint.  Zurich attaches a true, accurate, and certified copy of Taste Buds' policy as **Exhibit 1** (AZIC_Taste_Buds_0000001 *et seq.*) (the "Zurich Policy").  The property part of the Zurich Policy contains various forms explaining, among other things, the Policy's building and personal property coverage, business income and extra expense coverage, and covered causes of loss.  AZIC_Taste_Buds_0000012.

The Policy's Building And Personal Property Coverage Form (CP 00 10 10 12) states, in "A. Coverage," that Zurich "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  AZIC_Taste_Buds_0000054.  The Policy explains, in "E. Loss Conditions, 4. Loss Payment," how loss is valued and paid for "direct physical loss of or damage to" covered property, as follows:

> **a.**     In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>
> **(1)**     Pay the value of lost or damaged property;
>
> **(2)**     Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;
>
> **(3)**     Take all or any part of the property at an agreed or appraised value; or
>
> **(4)**     Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.
>
> *            *            *

AZIC_Taste_Buds_0000064.

Taste Buds does not seek coverage for any such loss or damage under the policy's Building And Personal Property Coverage Form.  ECF 1, Complaint ¶¶ 1–109.  Instead, Taste Buds seeks coverage under the Zurich Policy's "Business Interruption and/or Civil Authority" coverage parts.  *Id.* ¶¶ 105–09.  Those coverage parts are both found in the Zurich Policy's Business Income (And Extra Expense) Coverage Form (CP 00 30 10 12).  AZIC_Taste_Buds_0000070–71.  The Business Income (And Extra Expense) Coverage Form provides certain coverage for loss of income generally under two scenarios: (1) where the insured's own property is damaged; and (2) where another's property is damaged resulting in an order prohibiting access to the insured's property.  *Id.*

As for loss of income due to loss or damage to the insured's own property, the Business Income (And Extra Expense) Coverage Form states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by ***direct physical loss of or damage to property*** at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

AZIC_Taste_Buds_0000070 (emphasis added).

As for loss of income due to loss or damage to someone else's property, in response to which a civil authority issues an order prohibiting access to the insured's property, the Business Income (And Extra Expense) Coverage Form states:

> In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay

6

for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)**    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)**    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*        *        *

AZIC_Taste_Buds_0000071.  According to the Zurich Policy's Causes Of Loss – Special Form

(CP 10 30 09 17), "Covered Causes of Loss means ***direct physical loss*** unless the loss is

excluded or limited in this policy."  AZIC_Taste_Buds_0000087 (emphasis added).

The Policy also contains the following prominent endorsement stating that Zurich will

not pay for any loss or damage caused by or resulting from any virus:

<b>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</b>

<b>EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA</b>

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.**  The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

7

**B.** We will not pay for loss or damage caused by or resulting from any **virus**, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

AZIC_Taste_Buds_0000081 (emphasis added). The exclusion "applies to all coverage under all forms and endorsements that comprise" the policy's property coverage part, including to "forms or endorsements that cover business income, extra expense or action of civil authority." *Id.* In the complaint, Taste Buds contends that the Virus Exclusion does not bar coverage for its losses, and that "regulatory estoppel" prevents Zurich from relying on the Virus Exclusion to deny coverage, alleging that doing so would be "inconsistent" with statements that another entity, the Insurance Services Office ("ISO"), purportedly made to regulators in 2006 that the Virus Exclusion relates to "contamination by disease-causing viruses…." ECF 1 Complaint, at ¶¶ 99–104.

Taste Buds advances two causes of action against Zurich, both based on the same allegations summarized above. In Count I, Taste Buds seeks a declaration that Zurich must provide "Business Interruption" and "Civil Authority" coverage for its business-income losses. *Id.* ¶¶ 105–07. In Count II, Taste Buds seeks compensatory and other damages as a result of an alleged breach of contract, *i.e.*, the Zurich Policy issued to Taste Buds. *Id.* ¶¶ 108–09.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(b)(6) Standards

When deciding a Rule 12(b)(6) motion to dismiss, the Court reviews the face of the complaint, accepting as true all well-pleaded factual allegations and construing them in the light most favorable to the non-moving party. *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 2020 WL 6501722, at *2 (D.N.J. Nov. 5, 2020) (citing *Phillips v. Cty. of Allegheny*, 515 F.3d

224, 228 (3d Cir. 2008)).  "[A] complaint is sufficient if it contains enough factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at *2 (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  The plausible-complaint test has three parts.  *N&S*, 2020 WL 6501722, at *2 (citing

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  First, the Court should "tak[e]

note of the elements a plaintiff must plead to state a claim."  *Santiago*, 629 F.3d at 130 (quoting

*Iqbal*, 556 U.S. at 675).  Next, the Court should "identify allegations that, 'because they are no

more than conclusions, are not entitled to the assumption of truth.'"  *Id.* at 131 (quoting *Iqbal*,

556 U.S. at 680).  Lastly, the Court should identify any "well-pleaded factual allegations,"

assume those allegations are true, and then "determine whether they plausibly give rise to an

entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680).  "A complaint cannot survive where

a court can infer only that a claim is merely possible rather than plausible."  *N&S*, 2020 WL

6501722, at *2 (citing *Santiago*, 629 F.3d at 130).  A complaint chock full of "legal conclusions"

and "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," should be dismissed.  *Id.* at *2 (quoting *Iqbal*, 556 U.S. at 678).

The Court's review is not limited solely to the allegations in the complaint.  "[T]he court

may rely on 'the complaint, attached exhibits, and matters of public record' without converting

the motion to one of summary judgment.'"  *Id.* at *2 (quoting *Sands v. McCormick*, 502 F.3d

263, 268 (3d Cir. 2007)).  The Court also may consider "documents incorporated into the

complaint by reference, and matters of which the court may take judicial notice," such as

"documents 'integral to or explicitly relied upon in the complaint[.]'"  *In re Prudential*

*Financial, Inc. Securities Litigation*, 2020 WL 7706860, at *7 (D.N.J. Dec. 29, 2020) (citations

omitted).  Thus, the Court may and should consider an insurance policy under which a plaintiff

alleges it is entitled to coverage for losses.  *E.g., Shore Options Inc. v. Great Am. Ins. Grp.*, 2020 WL 5627211, at *3 (D.N.J. Sept. 21, 2020).

Dismissal should be with prejudice where amendment of the complaint would be futile. *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "An amendment is futile if the amended complaint would not survive a motion to dismiss."  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *see also Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007) ("Where an amended pleading would be futile, that alone is sufficient ground to deny leave to amend.").  This Court has dismissed with prejudice other complaints seeking business-interruption coverage with respect to the SARS-CoV-2 virus where amendment would be futile.  *Re: Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 7338081, at *3 (D.N.J. Dec. 14, 2020).  New Jersey state courts, applying identical motion-to-dismiss standards, have done the same.  *See, e.g., Mattdogg, Inc. v. Philadelphia Indem. Ins. Co.*, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law Div. Nov. 17, 2020); *Mac Property Group LLC v. Selective Fire and Cas. Ins. Co.*, 2020 WL 7422374, at *9 (N.J. Super. Ct. Law Div. Nov. 05, 2020); *FAFB LLC v. Blackboard Ins. Co.*, MER-L-0892-20, Tr. at p. 12 (N.J. Super. Ct. Law Div. Nov. 4, 2020).[3]

### B.    Insurance Coverage Standards

Under New Jersey law, interpretation of insurance policies, including what a policy covers and excludes, poses a "question of law."  *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012).  An insurance policy should be "interpreted according to its plain and ordinary meaning."  *Voorhees v. Preferred Mat. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992).  If the language of the policy is clear and unambiguous, "the

---

[3]  A copy of the *FAFB* dismissal order and accompanying transcript of the motion-to-dismiss hearing, explaining its order, are attached as **Exhibit 2**.

court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994); *see also Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) ("If the language is clear, that is the end of the inquiry.") (citation omitted).  The Court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)).  Thus, courts should not force ambiguities into an insurance policy, or allow its terms to "be artfully construed to include a type of coverage outside the scope and nature of the [contract] in question." *N&S*, 2020 WL 6501722, at \*2 (citation omitted).

"It is well-settled that the insured bears the burden of establishing that a claim lies within the policy's scope of coverage." *Shaler ex rel. Shaler v. Toms River Obstetrics & Gynecology Assocs.*, 893 A.2d 53, 60 (N.J. Super. Ct. App. Div. 2006) (citations omitted); *see also F.S. v. L.D.*, 827 A.2d 335, 338 (N.J. Super. Ct. App. Div. 2003) ("[T]he insured has the burden 'to bring the claims within the basic terms of the policy.'") (citation omitted).  "The insurer bears the burden to establish that an exclusion applies." *Sosa v. Massachusetts Bay Ins. Co.*, 206 A.3d 1011, 1016 (N.J. Super. Ct. App. Div. 2019) (citation omitted).  "Although exclusionary clauses are construed narrowly, they will be applied where they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *N&S*, 2020 WL 6501722, at \*2 (quoting *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, 2015 WL 248490, at \*4 (N.J. Super. Ct. App. Div. Jan. 20, 2015) (internal citation omitted).  "Far-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Wear v. Selective Ins. Co.*, 190 A.3d 519, 528 (N.J. Super. Ct. App. Div. 2018) (citation omitted).  "The Third Circuit and courts within this Circuit have regularly granted motions to dismiss in insurance cases when the plaintiff's allegations fall

11

squarely within the policy's exclusion to coverage." *N&S*, 2020 WL 6501722, at *2 (citations omitted).

IV.     **ARGUMENT**

For two separate but equally compelling reasons, Taste Buds cannot state a claim for coverage with respect to its COVID-19 losses under the Zurich Policy. Taste Buds cannot allege a plausible claim for business-income or civil-authority coverage because there has been no "direct physical loss of or damage to" property. In addition, the policy's Virus Exclusion excludes all coverage in any event. The Court should dismiss Taste Buds' claims against Zurich with prejudice, because amendment of the complaint would be futile.

A.     **Taste Buds Is Not Entitled To Business-Income Coverage Because Taste Buds Does Not Allege "Direct Physical Loss Of Or Damage To" Property**

Taste Buds has the initial burden of bringing its claim within the basic terms of the Zurich Policy's business-income coverage. Taste Buds' allegations fail to do so. For business-income coverage to apply, the Zurich Policy requires that "direct physical loss of or damage to property" have occurred. Taste Buds alleges that the "Executive Order Shutdown" caused a "loss of access, loss of use, and loss of functionality" of Taste Buds' property, and therefore "constitutes the 'physical loss of'" property. But that argument has been rejected by numerous courts, including this one, because the phrase "direct physical loss of or damage to" property requires more than just loss of use of one's property. The phrase requires "a distinct, demonstrable, physical alteration of the property" to have occurred, which is not alleged.

1.     **Case law holds that "direct physical loss of or damage to" property requires physical alteration of property**

The Court need not look far for the meaning of "direct physical loss of or damage to" property. "As further explicated by an oft-cited treatise," this Court stated in *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 245 F. Supp. 2d 563 (D.N.J. 2001), *aff'd*, 311 F.3d

226 (3d Cir. 2002), "[t]he requirement that the loss be 'physical,' given the ordinary definition of

that term is widely held to exclude alleged losses that are intangible or incorporeal, and thereby,

to preclude any claim against the property insurer when the insured merely suffers a detrimental

economic impact unaccompanied by *a distinct, demonstrable, physical alteration of the*

*property*." *Id.* at 579 (quoting 10 COUCH ON INSURANCE § 148:46 (3d ed.)) (emphasis added).

Thus, the phrase requires a "distinct, demonstrable, physical alteration of the property" to have

occurred. *Id.*

In *Port Authority*, this Court held that real estate premises did not sustain "direct physical

loss or damage," as so defined, as a result of the presence of asbestos fibers on the premises. *Id.*

at 582–84.  On appeal, the Third Circuit, applying New Jersey law, affirmed this Court's

holding, concluding that "physical loss or damage" occurs "only if an actual release of asbestos

fibers from asbestos containing materials has resulted in contamination of the property *such that*

*its function is nearly eliminated or destroyed*, or the *structure is made useless or*

*uninhabitable*, or if there exists an imminent threat of the release of a quantity of asbestos fibers

that would cause such loss of utility."  *Port Authority of New York and New Jersey v. Affiliated*

*FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (emphasis added).  The Court of Appeals

explained that "[t]he requirement that the contamination reach such a level in order to come

within coverage limitation establishes a reasonable and realistic standard for identifying physical

loss or damage," agreeing with this Court's conclusion that "[t]he mere presence of asbestos or

the general threat of its future release is not enough … to show a physical loss or damage to

trigger coverage under a first-party 'all risks' policy." *Id.*

More recent decisions, including by this Court, reinforce the rule that "direct physical

loss of or damage to" property requires some actual physical damage or alteration to property to

have occurred.  In *Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 7338081 (D.N.J. Dec. 14, 2020), for instance, this Court dismissed a similar complaint seeking coverage for business-income loss because the insured did not allege a "direct physical loss or damage" to its property.  *Id.* at *2.  "The Policy unambiguously limits its coverage to physical loss or damage to Plaintiff's commercial property," the Court observed, concluding that phrase required physical damage.  *Id.*  "Plaintiff has not alleged any facts that support a showing that its property was ***physically damaged***," the Court held.  *Id.* (emphasis added).

In another recent decision in the SARS-CoV-2 context, the New Jersey Superior Court concluded that "direct physical loss of or damage to" property was not established by an allegation of mere "loss of use of property," as a result of a shutdown order, explaining that "there's no coverage under New Jersey Law for loss of use … standing alone ***without some physical impact on the property***."  *FAFB LLC v. Blackboard Ins. Co.*, MER-L-0892-20, Tr. at 6 (N.J. Super. Ct. Law Div. Nov. 4, 2020) (Exhibit 2) (citing *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724, 734 (N.J. Super. Ct. App. Div. 2009)) (emphasis added).

New Jersey courts are not alone in requiring an actual physical alteration of property to have occurred for the insured to be entitled to business-income coverage.  This basic conclusion, enforcing the plain terms of insurance for first-party property loss, is widely accepted.  *See, e.g., TJBC v. Cincinnati Ins. Co.*, 2021 WL 243583, at *4–5 (S.D. Ill. Jan. 25, 2021) (finding that "direct physical loss of or damage to" property "unambiguously requires some form of tangible loss or damage to the physical dimension of Plaintiff's property," and that "[m]ere loss of use or diminishment in value of Plaintiff's business without underlying tangible damage or loss to the business property or structure is not enough to trigger coverage under the policy"); *O'Brien Sales & Mktg., Inc. v. Transportation Ins. Co.*, 2021 WL 105772, at *3 (N.D. Cal. Jan. 12, 2021)

(concluding that " 'a detrimental economic impact,' such as loss of use, 'unaccompanied by a distinct, demonstrable, physical alteration of the property,' is insufficient") (citations omitted).[4]

The cases Taste Buds relies on in its complaint — *Customized Distribution Servs. v. Zurich Ins. Co.*, 862 A.2d 560 (N.J. Super. Ct. App. Div. 2004); *Wakefern*, *supra*; and *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) — do not stand for a contrary rule.  ECF 1, Complaint ¶¶ 28–33.  Those cases, too, require the insured to show that its property sustained an actual physical alteration or impact in order to satisfy the requirement of "direct physical loss of or damage to" property.  In *Customized*, for instance, the Appellate Division found "a direct physical loss, or a risk of such loss" where the insured's warehouseman ruined the insured's "Splash beverage" by failing to rotate the product as agreed.  862 A.2d at 565–66.  "[W]hat occurred was that the Splash beverage changed," the court observed, "stemm[ing] from [the warehouseman's] alleged fault in handling the task of product rotation," resulting in "a change" that was "the functional equivalent of damage of a material nature or an alteration in physical composition."  *Id.* at 566.  The warehouseman's "misrotation" of the insured's product, the court added, transformed the product "as if it had

---

[4]  So many recent decisions agree that it would take pages to list them all.  But, as an example, *see Unmasked Management, Inc. v. Century-National Ins. Co.*, 2021 WL 242979, at *4 (S.D. Cal. Jan. 22, 2021); *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, 2021 WL 199980, at *5 (S.D. Fla. Jan. 20, 2021); *Independence Rest. Group. v. Certain Underwriters at Lloyd's, London*, 2021 WL 131339, at *5 (E.D. Pa. Jan. 14, 2021) (citing *Port Auth.*, 311 F.3d at 235, and 10 COUCH ON INS. § 148:46 (3d ed. 1998)); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 2020 WL 7351246, at *5–6 (W.D. Tex. Dec. 14, 2020) (citing 10 COUCH ON INS. § 148:46 (3d ed. 2005)); *Kirsch v. Aspen Am. Ins. Co.*, 2020 WL 7338570, at *4–5 (E.D. Mich. Dec. 14, 2020) (same); *Cetta*, 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020) (same); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, 2020 WL 7251362, at *5–6 (S.D. Fla. Dec. 7, 2020) (same); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *5 (D. Kan. Dec. 3, 2020) (same); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 2020 WL 6163142, at *7 (S.D. Ala. Oct. 21, 2020) (same); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712, at *4 (C.D. Cal. Sept. 10, 2020) (same); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (same).

15

turned sour or gone bad in some more tangible or material way." *Id.*

So, too, in *Wakefern*, the Appellate Division found a direct physical loss because there was "a physical incident or series of incidents," causing "the [electricity] grid and its component generators and transmission lines" to become "physically incapable of performing their essential function of providing electricity." 968 A.2d at 734. The "physical incident" was a "large scale cascading blackout" caused by "the de-energizing of transmission lines by the proper operation of protective relay devices." *Id.* at 731. The decision in *Gregory Packaging*, the third case referenced in Taste Buds' complaint, is consistent. Relying on both *Port Authority* and *Wakefern*, this Court in *Gregory Packaging* concluded that there was a physical loss because an "ammonia release physically transformed the air within [the insured's] facility so that it contained an unsafe amount of ammonia," and that "the heightened ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated." 2014 WL 6675934, at *6.

Thus, multiple cases establish that "loss of access, loss of use, and loss of functionality," ECF 1, Complaint ¶¶ 33–35, without a physical alteration or impact to the property, do not qualify as "direct physical loss of or damage to" property. Without a physical alteration or impact to Taste Buds' property, there is no business-income coverage under the Zurich Policy.

## 2. Other policy language shows that "direct physical loss of or damage to" property means actual physical alteration of property

The notion that "direct physical loss of or damage to" property requires a physical alteration or impact is directly supported by other language in the Zurich Policy. The phrase "direct physical loss of or damage to" property "is not an island unto itself; it is inextricably interwoven into an insurance policy that must be read as a whole." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1274 (N.J. 2017) (Albin, J., dissenting) (citations omitted); *see also Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958 (N.J. 2014)

("Contracts should be read 'as a whole in a fair and common sense manner.'") (citation omitted).

Other language in the Zurich Policy demonstrates that the phrase "direct physical loss of or

damage to" property requires more than just "loss of access, loss of use, and loss of

functionality," but rather an actual change in the physical characteristics of property.

     As quoted above, the Zurich Policy's Building And Personal Property Coverage Form

pays for "direct physical loss of or damage to" property, in one of the following ways: Zurich

can pay "the value of lost or damaged property"; can pay "the cost of repairing or replacing the

lost or damaged property"; can "[t]ake all or any part of the property at an agreed or appraised

value"; or can "[r]epair, rebuild or replace the property with other property of like kind and

quality."  CP 00 10 10 12, p. 11 of 16, AZIC_Taste_Buds_0000064.[5]  Similarly, under the

Zurich Policy's Business Income (And Extra Expense) Coverage Form, Zurich pays loss of

income only "during the 'period of restoration,'" which the Policy defines in part as "the period

of time" between "the time of direct physical loss or damage" and "[t]he date when the property

… should be repaired, rebuilt or replaced with reasonable speed and similar quality[.]"  CP 00 30

10 12, pp. 1 and 9 of 9, AZIC_Taste_Buds_0000070, -78.  This language shows that the Zurich

Policy covers business income loss only when tangible property is physically altered in a way

that would require repair, rebuilding, or replacement—as otherwise, the "period of restoration"

would have no meaning.  With no need for repair, rebuilding, or replacement, therefore, there is

---

[5]  Notably, despite alleging that it sustained a "direct physical loss of or damage to" its property,
Taste Buds does not seek any payment under the policy's Building And Personal Property
Coverage Form.  "Usually, business income or business interruption insurance is tied to
underlying property damage coverage because only business interruptions or income losses
resulting directly from physical loss or damage to the insured property will be covered."  11A
COUCH ON INS. § 167:12 (citation omitted).  Here, there is no lost or damaged property to value,
for purposes of repairing or replacing it with property "of like kind and quality," because the
property has not been lost or damaged.  Taste Buds does not allege that its property experienced
a physical loss or damage that would warrant any payment under this part of the Zurich Policy.

no covered "direct physical loss of or damage to" property, based on the Policy's plain language.

Numerous courts, including those in New Jersey, have concluded that identical "period of restoration" language means that a "direct physical loss" must be a tangible alteration to property.  *See, e.g., FAFB*, Tr. at 7 (Exhibit 2) (concluding there was no "direct physical loss" because "there is nothing to repair, rebuild or replace," even though "plaintiff's policy provides coverage only during a period of restoration which expressly assumes repair, rebuild or replacement of property," adding that "a reasonable insured would understand a repair to become necessary upon a tangible alteration of property and not in context of a Government order imposing restrictions").[6]

Here, like the insureds in the foregoing cases, Taste Buds does not allege that any property needs repair, rebuilding, or replacement for any reason, and certainly not because of the Executive Order Shutdown.  Taste Buds alleges that it cannot use its property, as intended, simply because the government said so.  If such intangible, economic loss is "direct physical loss of or damage to" property under the Zurich Policy, then the "period of restoration" language is meaningless — a result this Court should avoid when interpreting the Zurich Policy.  *See Homesite Ins. Co. v. Hindman*, 992 A.2d 804, 807 (N.J. Super. Ct. App. Div. 2010) ("We will not read one policy provision in isolation when doing so would render another provision meaningless."); *see also Moody*, 2021 WL 135897, at *6 (a conclusion that "government closure

---

[6]  These cases decide similarly: *TJBC*, 2021 WL 243583, at *4–5; *Independence*, 2021 WL 131339, at *6; *Clear*, 2021 WL 131283, at *7; *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 2021 WL 131556, at *7 (E.D. Pa. Jan. 14, 2021); *ATCM*, 2021 WL 131282, at *5; *TAQ*, 2021 WL 131555, at *6; *Moody*, 2021 WL 135897, at *6; *Zagafen*, 2021 WL 131657, at *6; *Newchops*, 2020 WL 7395153, at *1, 5;  *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 7024287, at *3–4 (E.D. Pa. Nov. 30, 2020); *4431*, 2020 WL 7075318, at *12–13; *1210 McGavock Street Hospitality Partners, LLC v. Admiral Indem. Co.*, 2020 WL 7641184, at *7–8 (M.D. Tenn. Dec. 23, 2020); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 2020 WL 7490095, at *10 (N.D. Ohio Dec. 21, 2020); *Cetta*, 2020 WL 7321405, at *6–7; *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 6503405, at *6 (S.D. Miss. Nov. 4, 2020).

orders" constitute "direct physical loss of or damage to" property "would render" the "period of restoration" language in policy "superfluous or nonsensical"); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 2020 WL 7321405, at *7 (S.D.N.Y. Dec. 11, 2020) ("Sparks's reading of the Policy — that 'loss of use' is covered — additionally would render the two possible end dates of the 'period of restoration' provision meaningless…..").

        3.      **The "Executive Order Shutdown" does not constitute or cause "direct physical loss of or damage to" property**

Up against the foregoing authority, Taste Buds' claim for business-income coverage fails as a matter of law.  The claim proceeds on the baseless theory that "[w]hen the State government orders an insured to close down its restaurant, making it unavailable for any of the purposes for which the property is intended, this constitutes the 'physical loss of' such property."  ECF 1, Complaint, at ¶ 81.  The Executive Order Shutdown is not a "physical incident or series of incidents," *Wakefern*, 968 A.2d at 734, nor has it "physically transformed the air," *Gregory Packaging*, 2014 WL 6675934, at *6, or any other physical dimension of Taste Buds' premises, "such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable."  *Port Authority*, 311 F.3d at 236.  Such an order cannot cause, and does not constitute, a "distinct, demonstrable, physical alteration" in any property.  But it may cause a "detrimental economic impact," like the one described in Taste Buds' complaint.  Taste Buds' purely economic loss as a result of the Executive Order Shutdown — the only loss described in the complaint — is "intangible" or "incorporeal," and therefore does not constitute "direct physical loss of or damage to" property.  Taste Buds' claim for business-income coverage is legally insufficient and should be dismissed as such.

This Court recently dismissed a similar claim for business-income coverage in the SARS-CoV-2 context.  In *Boulevard Carroll*, the Court observed that "[e]ach of the coverage

provisions … specifically require 'direct physical loss or damage' to trigger the Policy," and concluded that "Plaintiff has not alleged any facts that support a showing that its property was physically damaged," explaining that it was "not enough" to allege "that by forcing him to close his business, the Stay-At-Home Orders caused Plaintiff to lose income and incur expenses." 2020 WL 7338081, at *2 (citation omitted).

New Jersey state courts also have dismissed this type of claim.  In *Mac Property Group LLC v. Selective Fire and Cas. Ins.* Co., 2020 WL 7422374 (N.J. Super. Ct. Law Div. Nov. 05, 2020), which this Court cited in *Boulevard Carroll*, the insureds alleged that they "suffered direct physical loss and damage to property as a result of being unable to use their property for its intended purpose," as a result of numerous civil authority orders, some of which are also identified in Taste Buds' complaint.  *Id.* at *1.  The New Jersey Superior Court rejected the claim, concluding that "Plaintiff[s] point[ ] to no direct physical loss or damage to covered property," explaining that "[t]here is no direct physical loss or damage to property which resulted in the order of civil authority."  *Id*. at *9.  The Superior Court reached the same conclusion in *FAFB* where, as here, the insured "alleged that it suffered covered loss or damage as a result of the closure of its business based on the Governor's orders."  Tr. at 5 (Exhibit 2).  Examining similar policy language, the Superior Court rejected the claim that a governmental order constitutes "direct physical loss of or damage to" property, concluding that "the Government orders do not create any distinct demonstrable physical impact on the property," nor do they "represent an external event that changed the insured property."  *Id.* at 6–7 (citations omitted).

Other courts in this circuit have dismissed claims for loss of income caused by virus-related shut-down orders, due to the obvious lack of physical alteration of property.  *See, e.g., 1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, 2021 WL 147139, at *5 (W.D. Pa. Jan. 15, 2021)

("[A] determination that 'direct physical loss of or damage to' the property can refer to mere economic losses caused by governmental orders limiting the use of property (while not impacting the physical structure itself) would stretch the language beyond the plain meaning of its terms and beyond the interpretive authority of the Court."); *Independence*, 2021 WL 131339, at *7 ("With respect to the government orders, even assuming they had rendered IRG's property uninhabitable or nearly eliminated or destroyed its function, loss of use caused by government orders cannot constitute 'direct physical loss of ... property'....").[7]

Even the cases cited in Taste Buds' complaint — *Customized*; *Wakefern*; and *Gregory Packaging* — undermine its novel theory that a shut-down order causes "direct physical loss of or damage to" property.  All of the cases, unlike here, involved a physical force tangibly impacting the insured's property, rendering it completely useless.  None of the cases involved a government order.  In fact, in *Wakefern*, the Appellate Division explicitly rejected the type of theory Taste Buds presses here.  *See id.*, 968 A.2d at 734 n.7 (concluding there would be no direct physical loss "if, for example, a governmental agency had ordered that the power be shut off to conserve electricity") (citation omitted).  Taste Buds' similar claim, that the Executive Order Shutdown was "issued to prophylactically to prevent people from gathering in groups and spreading the virus," ECF 1, Complaint, at ¶ 101, likewise does not constitute "direct physical loss" of property.

Taste Buds' novel theory lacks currency outside of New Jersey and this circuit, too, as any survey of recent decisions demonstrates.  *See, e.g., Unmasked*, 2021 WL 242979, at *5 ("Plaintiffs are not the first to contend that their temporary and partial loss of use or functionality of their property resulting from the Closure Orders … constitutes a 'direct physical loss of or

---

[7]  There are many other cases.  For other examples, *see TAQ*, 2021 WL 131555, at *5; *4431*, 2020 WL 7075318, at *12.

damage to' that property. Courts applying California law have all but universally rejected these attempts as lacking the requisite 'distinct, demonstrable, physical alteration' necessary to show physical loss or damage.").[8]  Based on the foregoing, and contrary to Taste Buds' conclusory allegations, the Executive Order Shutdown does not cause or constitute "direct physical loss of or damage to" property.  The order may have caused a "detrimental economic impact," but not any physical alteration of any property, let alone such an alteration that would require "repair, replacement, or rebuilding" of the property.  The Zurich Policy's business-income part requires "direct physical loss of or damage to" property to have occurred, and Taste Buds' complaint has not alleged it.  The Court should dismiss Taste Buds' claim for business-income coverage.

**B.**     **Taste Buds Is Not Entitled To Civil-Authority Coverage Because Taste Buds Does Not Allege A "Covered Cause Of Loss" Or Facts Satisfying Numerous Other Requirements For Coverage**

For similar and additional reasons, Taste Buds' claim for civil-authority coverage should be dismissed.  Taste Buds is required to establish *all* of the numerous requirements for coverage under the Zurich Policy's civil authority part, which include (1) "a Covered Cause of Loss"; (2) "damage to property other than at the described premises"; (3) "action of civil authority that prohibits access to the described premises"; (4) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage"; (5) "the described premises are within that area but are not more than one mile from the damaged property"; and (6) "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the [direct physical loss] that caused the damage."  Business Income (And Extra Expense) Coverage Form, CP 00 30 10 12, p. 2 of 9,

---

[8] *See also K D Unlimited Inc. v. Owners Ins. Co.*, 2021 WL 81660, at *6 (N.D. Ga. Jan. 5, 2021); *Terry Black's*, 2020 WL 7351246, at *6; *Cetta*, 2020 WL 7321405, at *5, 8; *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020).

AZIC_Taste_Buds_0000071.  The complaint does not allege facts establishing any of these requirements for civil-authority coverage.  Thus, the claim should be dismissed.

For a start, Taste Buds has not alleged a "Covered Cause of Loss," defined in part as "direct physical loss unless the loss is excluded or limited in this policy,"[9] for the reasons already explained above.  The Executive Order Shutdown does not constitute a "direct physical loss," and therefore does not constitute a "Covered Cause of Loss."  Also, logically, the Executive Order Shutdown cannot be both the "Covered Cause of Loss" and the "action of civil authority" which is "taken in response to dangerous physical conditions resulting from" it.  *See Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 2020 WL 7395153, at *6 (E.D. Pa. Dec. 17, 2020).

Taste Buds also has not alleged the existence of any damage to anyone else's property within proximity to Taste Buds' property.  Taste Buds' allegations that the SARS-CoV-2 virus can, or has a tendency to, cause damage to property and has caused damage "in New Jersey," ECF 1 Complaint ¶¶ 48, 74–75, 78, are conclusory and therefore properly ignored in this proceeding.  *N&S*, 2020 WL 6501722, at *2 (citing *Santiago*, 629 F.3d at 131); *see also Independence*, 2021 WL 131339, at *8 ("general allegations that the coronavirus is present nearby does not mean nearby property suffered 'direct physical loss' or 'damage' as those terms apply in the Policy.").  Without even identifying another property purportedly damaged by the Executive Order Shutdown, there also is no way to determine whether Taste Buds' property is "not more than one mile from the damaged property," as required for civil-authority coverage.

Numerous courts, including those in New Jersey, have dismissed claims for civil-authority coverage where the complaint fails to identify damage to another's property, or the

---

[9]   Causes Of Loss – Special Form, CP 10 30 09 17, p. 1 of 10, AZIC_Taste_Buds_0000087.  As explained in the next section, the Zurich Policy's Virus Exclusion also excludes coverage for the loss, so, there is no "Covered Cause of Loss" for this additional reason.

necessary causal nexus between that damage and the civil authority order.  *See, e.g., Mattdogg*, 2020 WL 7702634, at *4 ("Plaintiff alleges no facts establishing any nexus between damage to nearby property and Governor Murphy's orders."); *FAFB*, Tr. at p. 8 (Exhibit 2) (rejecting claim for civil-authority coverage because it "applies only in specifically defined circumstances … where damage to a nearby property prohibits access to the immediately surrounding area, including the insured restaurant"); *1 S.A.N.T.*, 2021 WL 147139, at *7 ("1 S.A.N.T. has failed to plead any such loss or damage, either to the covered property or any other property.").

In fact, as in countless other recent cases, Taste Buds alleges that the civil authority order was issued to curb the spread of the SARS-CoV-2 virus — not "in response to dangerous physical conditions resulting from the damage" to someone else's property.  *See* ECF 1, Complaint ¶ 101 ("[T]he Executive Orders were issued prophylactically to prevent people from gathering in groups and spreading the virus.").  The claim for coverage fails for this reason, too. *See, e.g., Newchops*, 2020 WL 7395153, at *6 ("The shutdown orders and accompanying proclamations were in response to the COVID-19 health crisis, not damage to any property — the insureds' or another's….. The insureds assert as much in their amended complaints."); *Moody*, 2021 WL 135897, at *8 ("The Court agrees that the orders were issued to respond to COVID-19. But as Moody Jones itself also alleges, these orders were issued 'to mitigate health risks to the public by attempting to prevent COVID-19 contamination.' … These orders were issued to address the ongoing health crisis and the reality of people spreading COVID-19 to other people, not as a direct result of some 'direct physical loss.'").

In addition, Taste Buds does not allege that access to its premises was prohibited by the Executive Order Shutdown.  Taste Buds alleges that the order "required the closing of the Restaurants," and stated that "businesses must close to the public as long as this Order remains in

effect," ECF 1, Complaint ¶ 60–62, but Taste Buds does not allege that it was ever prohibited from accessing the premises on which the business operations were conducted.  This further forecloses Taste Buds' civil-authority claim.  *See FAFB*, Tr. at 9 (Exhibit 2) ("[T]he civil authority orders are only covered to the extent access to plaintiff's physical premises is prohibited and not if plaintiffs are simply prohibited from operating their business. So while the civil authority orders here precluded plaintiff from operating its in-person dining facility, they did not prohibit access to the premises for other purposes such as takeout and delivery.").  For all of the foregoing reasons, the Court should also dismiss Taste Buds' claim for civil-authority coverage, as the complaint does not allege facts supporting a claim for such relief.

### C.    The Policy's Virus Exclusion Also Precludes All Coverage

Regardless of the fact that Taste Buds has not alleged and cannot allege any of its losses are due to "direct physical loss of or damage to property," the Zurich Policy's plain and unambiguous Virus Exclusion nevertheless excludes all coverage.  Taste Buds alleges loss caused by or resulting from the SARS-CoV-2 virus, as all of its loss resulted from the Executive Order Shutdown, which was issued only because of the virus.  No level of artful pleading can get around this unavoidable fact.  The Court should therefore dismiss Taste Buds' claims.

The Zurich Policy includes a Virus Exclusion endorsement.  The exclusion states: "We will not pay for loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  CP 01 40 07 06, p. 1 of 1, AZIC_Taste_Buds_0000081 (emphasis added).  The Virus Exclusion states that it applies to the business-income and civil-authority parts of the Zurich Policy under which Taste Buds seeks coverage.  ECF 1, Complaint ¶¶ 20, 106, 109.  Those parts are contained in the Business Income (And Extra Expense) Coverage Form, CP 00 30 10 12, one of the forms

comprising the policy's Commercial Property Coverage Part.  Schedule Of Forms And Endorsements, U-GU-619-A CW (10/02), p. 1 of 1, AZIC_Taste_Buds_0000012.

The Virus Exclusion also plainly and unambiguously applies to Taste Buds' alleged loss. Taste Buds attributes its loss to "the physical loss of use, loss of functionality, or loss of access to" its property "occasioned by the Executive Order Shutdown."  ECF 1, Complaint ¶¶ 19, 76. And, without equivocation, Taste Buds alleges that the SARS-CoV-2 virus "is the reason the shutdown has been ordered."  *Id.* ¶¶ 78, 96–98.  The Virus Exclusion bars coverage for "loss … caused by or resulting from any virus…."  The only conclusion, based on a comparison of Taste Buds' allegations and the exclusion's language, is that Taste Buds' alleged loss is excluded from coverage, if it were even covered to begin with.

Seeking a way around that fact, Taste Buds alleges that the Executive Order Shutdown — not the virus which was "the reason the shutdown has been ordered" — is the true cause of Taste Buds' loss, and is not subject to the Virus Exclusion.  Taste Buds devotes many paragraphs of its complaint to an "efficient proximate cause" theory, arguing that the Virus Exclusion does not apply to the Executive Order Shutdown because the order, not the virus, is the efficient proximate cause of the loss.  ECF 1, Complaint ¶¶ 88–104.  Taste Buds is wrong because the theory applies only when a covered cause sets in motion a non-covered cause — not the other way around, as alleged here.  "The efficient proximate cause doctrine, more commonly referred to as Appleman's Rule, applies to risks and exclusions where a non-covered peril is set in motion by a covered peril in a chain of causation."  *Estate of Doerfler v. Fed. Ins. Co.*, 2020 WL 2488733, at *3 (N.J. Super. Ct. App. Div. May 14, 2020) (citing, *inter alia*, *Franklin Packaging Co. v. California Union Ins. Co.*, 408 A.2d 448, 449 (N.J. Super. Ct. App. Div. 1979)).  "Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence

26

and connection between the act and final loss, produced the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss." *Franklin Packaging*, 408 A.2d at 449 (citing 5 APPLEMAN, INSURANCE LAW AND PRACTICE, § 3083 at 309-311 (1970)).

Here, the complete opposite is alleged. The complaint alleges that a ***non-covered peril*** — the SARS-CoV-2 virus — set everything else in motion. Taste Buds alleges that the virus "is the reason the shutdown has been ordered." ECF 1, Complaint ¶ 78. Yet Taste Buds asserts that the Executive Order Shutdown, not the virus, is the "efficient proximate cause" of its loss.[10] For that to be true, the order must have caused/set in motion the SARS-CoV-2 virus — an obvious impossibility contradicting Taste Buds' own allegations that the *virus* led to the Executive Order Shutdown, which led to the income loss. *Id.* at ¶¶ 58–78. Thus, even under Taste Buds' theory, the virus is the efficient proximate cause of the loss, and therefore the Zurich Policy's Virus Exclusion precludes all coverage.

Case law supports this conclusion. For example, in *Ba Lax, LLC v. Hartford Fire Ins. Co.*, the court said: "Plaintiffs attempt to resist this conclusion by arguing that there is a material dispute regarding whether the efficient proximate cause of their losses was government restrictions as opposed to the virus. 'An 'efficient proximate cause' is a cause of loss that predominates and sets the other cause of loss in motion.'… Here, there is no genuine dispute that the activity of a virus, namely COVID-19, set government restrictions in motion, and is therefore the efficient proximate cause of Plaintiffs' claimed losses." 2021 WL 144248, at *4 (C.D. Cal.

---

[10]   This allegation is meritless for other reasons, too. Taste Buds' efficient-proximate-cause argument presupposes that the Executive Order Shutdown is a cognizable covered peril/cause of loss. It is not, principally because it does not constitute "direct physical loss." The same is true of the virus, itself, which is not "direct physical loss" where, as here, there is no allegation that the *virus* caused a "distinct demonstrable physical impact on the property."

Jan. 12, 2021) (quoting *Boxed Foods Co., LLC v. California Capital Ins. Co.*, 2020 WL 6271021, at *4 (N.D. Cal. Oct. 26, 2020), *as amended* (Oct. 27, 2020)).

Numerous other decisions similarly reject Taste Buds' claim.  At least one New Jersey state court has rejected Taste Buds' argument, holding that the same exclusion bars coverage for business-income losses caused by virus-related orders, explaining that such losses are "squarely within the exclusion."  *Mattdogg*, 2020 WL 7702634, at *4 ("Plaintiff's claims cannot survive the virus exclusion provision, which explains that Defendant 'will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.' The Governor issued his executive orders affecting Plaintiff's business as a direct result of COVID-19 … and any losses incurred therefrom are squarely within the exclusion.").  Other courts in this circuit also have rejected the argument based on the same or similar virus exclusion.  *See, e.g., Newchops*, 2020 WL 7395153, at *8 ("[T]he insureds argue that the cause of their losses and damages is the shutdown orders, not the COVID-19 virus.… [W]hether the cause of the losses was the shutdown orders or the virus, it was not covered."); *Toppers*, 2020 WL 7024287, at *1, 3 ("Plaintiff … seeks coverage for the government-mandated suspension of its businesses.… The commercial property policy …. includes an exclusion that applies to virus-related losses.… The language is not ambiguous, and it applies to Covid-19, which is caused by a coronavirus that causes physical illness and distress.… That means that the Virus Exclusion applies to [Plaintiff's] insurance claim.").[11]

---

[11] Courts outside of this circuit also have held that that the same virus exclusion unambiguously bars coverage for loss caused by a governmental order issued because of the SARS-CoV-2 virus. *See, e.g., Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 37984, at *6 (E.D. Mo. Jan. 5, 2021); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 2021 WL 22314, at *7 (M.D. Fla. Jan. 4, 2021); *1210 McGavock*, 2020 WL 7641184, at *5–6; *Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 7024882, at *3 (M.D.N.C. Nov. 30, 2020) (citation omitted).

The case law forecloses Taste Buds' claim that the Zurich Policy's exclusion does not apply to loss allegedly caused by the Executive Order Shutdown.  To hold otherwise would require ignoring the fact — articulated by Taste Buds itself — that the SARS-CoV-2 virus "is the reason the shutdown has been ordered."  ECF 1, Complaint ¶ 78.  Even if Taste Buds could demonstrate coverage in the first place, and it cannot, the Zurich Policy's Virus Exclusion precludes all such coverage, as a matter of law.  The Court should dismiss Taste Buds' claims.

###    D.    Taste Buds' "Regulatory Estoppel" Allegations Are Legally Insufficient

Seeking to avoid application of the Virus Exclusion, Taste Buds asserts that Zurich is not allowed to rely on it based on a statement Insurance Services Office, Inc. ("ISO") made to regulators 15 years ago.  Taste Buds states that, in 2006, "ISO represented to regulators that …. '[W]e are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms."  ECF 1, Complaint ¶ 100.  The "reach of the exclusion," Taste Buds argues in its complaint, does not "include indirect losses resulting from governmental attempts to contain the spread of the virus…."  *Id.* ¶ 103.

If the Court agrees that Taste Buds cannot allege "direct physical loss of or damage to" property in the first place, it need not address the scope of the Virus Exclusion or Taste Buds' "regulatory estoppel" argument — which seeks only to prevent reliance on that exclusion.  But the Virus Exclusion is fully effective, because even if Taste Buds' allegations are true, there is nothing inconsistent between what ISO told regulators about what the virus exclusion was intended to accomplish and the position that Zurich takes here — which is that the exclusion bars coverage for loss caused by or resulting from any virus.  The Court can, and should, reject Taste Buds' meritless estoppel allegations, as New Jersey courts and other courts recently have done.  *See FAFB*, Tr. at pp. 11-12 (Exhibit 2) ("[I]t's clear that this regulatory estoppel theory does not defeat the motion to dismiss. ***The defendant's position actually is consistent*** with the position

plaintiff [ascribes] to [ISO] during the regulatory process and it's clear when you look at the language and consistent with those representations that were made….") (emphasis added); *see also Mattdogg*, 2020 WL 7702634, at *4; *Moody*, 2021 WL 135897, at * 11 (citation omitted); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, 2021 WL 131555, at *9 (E.D. Pa. Jan. 14, 2021) (citations omitted); *Newchops*, 2020 WL 7395153, at *10 (citations omitted); *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, 2020 WL 7181057, at *3 (E.D. Pa. Dec. 7, 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 2020 WL 6545893, at *5 (E.D. Pa. Nov. 6, 2020).  The Court should join the numerous other courts and reject Taste Buds' attempt to avoid the unambiguous words of the Virus Exclusion.  *See Chubb Custom*, 948 A.2d at 1289 ("If the language is clear, that is the end of the inquiry.") (citation omitted); *Mattdogg*, 2020 WL 7702634, at *4 ("regulatory estoppel does not void clear and unambiguous provisions").

## V.        **CONCLUSION**

For all of the foregoing reasons, Zurich respectfully requests that this Honorable Court dismiss Taste Buds' claims against Zurich, because they fail to state a claim upon which relief can be granted.  Taste Buds is not entitled to business-income or civil-authority coverage, in the first place.  But even if it were entitled to such coverage, the Zurich Policy's unambiguous Virus Exclusion excludes it.  Dismissal should therefore be with prejudice because Taste Buds cannot survive a motion to dismiss.

Respectfully submitted,

**CLYDE & CO US LLP**

Dated: _____February 5, 2021_____        _____*s/ Timothy A. Carroll*_____
Timothy A. Carroll (NJ I.D. 124782014)
200 Campus Drive, Suite 300
Florham Park, NJ 07932
Telephone: 267-271-4822
Fax: 973-210-6701

Email: timothy.carroll@clydeco.us

Patrick Hofer (Admission Request Forthcoming)
1775 Pennsylvania Avenue, N.W., 4th Floor
Washington, D.C. 20006
Telephone: 202-747-5100
Fax: 202-747-5150
Email: patrick.hofer@clydeco.us

Jared Clapper (Admission Request Forthcoming)
55 Monroe Street, Suite 3000
Chicago, IL 60603
Telephone: 312-635-7000
Fax: 312-635-6950
Email: jared.clapper@clydeco.us

*Attorneys for Defendant,*
*American Zurich Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy A. Carroll, hereby certify that a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the electronic case filing system, which will send notification of such filings to the counsel for parties registered with the Court's CM/ECF system, including the following:

Francis P. Crotty, Esquire
Smith, Crotty, Meyer & Bruins
851 Franklin Lake Road, Suite 101
Franklin Lakes, NJ 07417
fcrotty@lawflnj.com
*Attorneys for Plaintiffs*

Susan M. Leming, Esquire
Brown & Connery LLP
360 Haddon Avenue
Westmont, NJ 08108
sleming@brownconnery.com
*Attorneys for Defendant,*
*AmGUARD Insurance Company,*
*incorrectly named "Berkshire*
*Hathaway Guard Insurance*
*Company"*


Dated: _____February 5, 2021_____        _____*s/ Timothy A. Carroll*_____